JOURNAL ENTRY AND OPINION
{¶ 1} Hugh Hunter ("Hunter") appeals from his conviction and sentence received in the Cuyahoga County Common Pleas Court. Hunter argues that the trial court erred when it failed to conduct a second competency hearing and when it imposed an unconstitutional sentence. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On September 1, 2004, Hunter attacked Andrew McAuliffe ("McAuliffe") as McAuliffe was closing up the church after attending the 7:00 o'clock morning mass at Saint Malachi church on 2459 Washington Street in Cleveland, Ohio. Without provocation, Hunter started beating McAuliffe in the face, causing multiple fractures and lacerations. Cleveland Police Officers arrested Hunter that same day.
 {¶ 3} On September 29, 2004, a Cuyahoga County Grand jury indicted Hunter with felonious assault with repeat violent offender and notice of prior conviction specifications. On October 12, 2004, the trial court referred Hunter to the Court Psychiatric Clinic ("Clinic") for competency and sanity evaluations. On November 10, 2004, the Clinic reported that Hunter "refused to cooperate with the evaluation" and it was therefore unable to render an opinion as to his competency. The trial court ordered that Hunter be transferred to Northcoast Behavioral Healthcare Center for a twenty-day inpatient competency evaluation. On December 16, 2004, this case was transferred to the mental health docket. *Page 4 
 {¶ 4} On February 25, 2005, the trial court re-referred Hunter to the Clinic for competency and sanity evaluations. On April 20, 2005, the trial court ordered Hunter to "take his prescribed medications including injectable medications" and authorized the Cuyahoga County Corrections staff to "administer such medications using reasonable force, if necessary." On April 26, 2005, the trial court referred Hunter to the Clinic for a status update. Eventually, the Clinic filed two competency evaluations, dated March 21 and May 11, 2005, both of which concluded that Hunter was competent to stand trial. The State of Ohio ("State") and defense counsel stipulated to the evaluations, and on May 23, 2005, the trial court adopted the findings, concluding that Hunter was competent to stand trial.
 {¶ 5} After determining Hunter's competency, the trial court attempted to hold a plea hearing. The trial court, through the advice of defense counsel, anticipated that Hunter would plead guilty to felonious assault and the State would dismiss the specifications. However, during the court's discussion with Hunter, it appeared that Hunter believed his attorney did not understand his position. The trial court postponed the hearing. On June 2, 2005, the trial court held another change of plea hearing. However, at the hearing, Hunter was adamant that he did not want to plead guilty. Because of this decision, the trial court referred Hunter to the Clinic for the fourth time to be re-evaluated for competency and sanity.
 {¶ 6} On July 28, 2005, the trial court ordered Hunter to undergo an inpatient competency evaluation at Twin Valley Behavioral Healthcare ("Twin Valley") in *Page 5 
Columbus. On December 8, 2005, after Hunter returned from Twin Valley, the trial court referred him to the Clinic for a sanity evaluation. However, Hunter refused to cooperate with the Clinic, and on January 11, 2006, the trial court referred him to Twin Valley for an inpatient sanity evaluation. On January 18, 2006, the trial court issued its second order requiring Hunter to take all prescribed medications and permitting staff to use "reasonable force" in administering them. On April 4, 2006, the trial court ordered Hunter returned from Twin Valley.
 {¶ 7} On May 18, 2006, the trial court conducted its third change of plea hearing and, once again, Hunter stated that he was not going to plead guilty. During a brief hearing on July 13, 2006, the trial court questioned Hunter about whether he was taking his medications. Hunter told the court that he felt he did not need them, but that he was not feeling well. After that, Hunter slipped off of his chair, fell to one knee, and then lay prone on the floor. The trial court issued its third order requiring Hunter to take all prescribed medications. On July 27, 2006, the trial court referred Hunter, for the sixth time, to the Clinic for competency evaluations.
 {¶ 8} On October 23, 2006, Hunter's case proceeded to trial. Hunter stipulated to the notice of prior conviction specification and asked that the repeat violent offender specification be bifurcated and determined by the trial court. The court agreed. During trial, the State called two witnesses and rested; defense counsel did not present witnesses. The jury retired and, after deliberating, found Hunter guilty of felonious assault as charged in the indictment. *Page 6 
 {¶ 9} After the jury's verdict, but prior to the bench trial on the repeat violent offender specification, the parties discussed a possible plea agreement. The potential agreement involved Hunter pleading guilty on an additional felony case in return for the dismissal of the repeat violent offender specification in the present case. Once again, Hunter displayed confusion and ultimately decided he did not want to plead guilty.
 {¶ 10} That same day, the trial court began Hunter's trial on the repeat violent offender specification. During this portion of his trial, Hunter stipulated to his indictment and conviction for felonious assault in CR240691 and to the medical records associated with that case. Deputy Sheriff Jimmy Fields testified about his investigation into the 1989 incident. Deputy Sheriff Fields stated that in 1989, Hunter assaulted corrections officer Gregory Rickett while he was in the psychiatric "pod" of the Cuyahoga County Jail. According to Deputy Sheriff Fields, Rickett received a laceration that required stitches. The trial court determined that the "physical harm specification has been proved beyond a reasonable doubt" and proceeded immediately to sentencing.
 {¶ 11} At the sentencing hearing, the trial court imposed a maximum sentence of eight years on the felonious assault charge and an additional two years for the repeat violent offender specification. The trial court ordered the time to be served consecutively for a total prison sentence of ten years. Hunter appeals, raising three assignments of error. *Page 7 
 {¶ 12} In his first assignment of error, Hunter argues as follows:
 "The trial court's failure to hold a subsequent competency hearing when new issues regarding appellant's competency arose prior to trial violated R.C. 2945.37 and R.C. 2945.371 and denied appellant due process of law."
 {¶ 13} As the Ohio Supreme Court has observed, "fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial." State v. Berry,72 Ohio St.3d 354, 359, 1995-Ohio-310. State v. Halder, Cuyahoga App. No. 87974,2007-Ohio-5940. The test used to determine if a criminal defendant is competent to stand trial was articulated in Dusky v. United States
(1960), 362 U.S. 402, 80 S.Ct. 788:
 "[T]he test must be whether he [the accused] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him."
 {¶ 14} The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains "sufficient indicia of incompetence" that an inquiry into the defendant's competency is necessary to ensure his right to a fair trial.Berry, supra, quoting Drope v. Missouri (1975), 420 U.S. 162,95 S.Ct. 896.
 {¶ 15} By statute, Ohio recognizes the right of a criminal defendant not to be tried or convicted of a crime while incompetent. R.C.2945.37(B) provides:
 "In a criminal action in a court of common pleas, a county court or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before *Page 8 
the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after trial has commenced, the court shall hold a hearing on the issue only for good cause shown * * * ."
 "A defendant is presumed competent to stand trial, unless it is proved by a preponderance of the evidence in a hearing under this section that because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense." State v. Vrabel (Mar. 2, 2000), Mahoning App. No. 95 CA 221.
 {¶ 16} Under constitutional due process principles, the standard for determining competency to stand trial is the same as the standard for determining competency to enter a guilty plea or a plea of no contest.Haider, supra; State v. Kovacek (May 30, 2001), 9th Dist. No. 00CA007713. The burden of establishing incompetence, however, is upon the defendant. Haider, supra. In reviewing a judge's determination of competency, we examine whether the conclusion was supported by competent, credible evidence. State v. Hicks (1989), 43 Ohio St.3d 72,79. A judge's decision on competency will not be disturbed absent an abuse of discretion. Haider, supra.
 {¶ 17} In the present case, Hunter's competency to stand trial was raised before the trial started. The record establishes that the trial court complied with the mandates of R.C. 2945.37 before the trial started. The court ordered numerous mental examinations to ensure that Hunter was competent to stand trial. In addition, the trial court conducted a hearing and all parties were given an opportunity to present evidence. In fact, the State and defense counsel stipulated to the *Page 9 
competency evaluations prepared by the Clinic. After hearing the stipulations, the trial court adopted the reports and found Hunter competent to stand trial. In State v. O'Neill, Mahoning App. No. 03 MA 188, 2004-Ohio-6805, the Seventh Appellate District determined that "where the parties stipulate to the contents of the competency reports which opine that the defendant is competent, the parties stipulate to competency and waive the competency hearing."
 {¶ 18} Nonetheless, Hunter argues that because over a year passed between his competency hearing and the time of trial, and issues of competency had been raised, the trial court should have conducted a second competency hearing. We note that Hunter's trial counsel never requested a second competency hearing and was comfortable enough with the trial court's decisions referring him for further competency and sanity evaluations and ordering Hunter to take his prescribed medications. In addition, at each stage in the process, the trial court took the time to question Hunter to determine if he was able to assist in his own defense. While no one disputes that Hunter suffers from "profound mental health issues," incompetency to stand trial "must not be equated with mere mental or emotional instability or even outright insanity." State v. Bock (1986), 28 Ohio St.3d 108; Haider, supra.
 {¶ 19} After reviewing the entire record before us and examining the totality of the evidence on the issue of competency, we conclude that there was competent, credible evidence before the trial court to support a finding of competency to stand *Page 10 
trial. We further find that the trial court did not abuse its discretion when it failed to conduct a second competency hearing. The trial court had sufficient evidence to indicate that Hunter was presently capable of consulting with his attorneys.
Accordingly, we overrule Hunter's first assignment of error.
 {¶ 20} In his second assignment of error, Hunter argues as follows:
 "The RVO enhanced sentence imposed upon appellant constituted a deprivation of his liberty without due process of law and a violation of his constitutional right to a trial by jury."
 {¶ 21} Hunter argues that the repeat violent offender ("RVO") specification is unconstitutional under State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856 and, therefore, the trial court erred when it sentenced him to additional prison time under the RVO specification. Hunter asks this court to vacate the additional two-year sentence imposed under the RVO specification. We disagree and affirm the actions of the trial court.
 {¶ 22} This court recently addressed this identical issue in State v.Fitzer, Cuyahoga App. No. 88177, 2007-Ohio-2496, and held as follows:
 "In State v. Foster syllabus 6, the Ohio Supreme Court held: `R.C. 2929.14(D)(2)(b) and (D)(3)(b) are capable of being severed. After the severance, judicial factfinding is not required before imposition of additional penalties for repeat violent offender and major drug offender specifications. (United States v. Booker (2005), 543 U.S. 220, 125 S.Ct. 738.)' We read this to mean that only the offending portion of R.C. 2929.14(D)(2)(b) is severed. Consequently, the imposition of an additional penalty for the RVO violation is constitutional. Thus, a judge may impose an additional one-to-ten year sentence on an RVO specification without judicial factfinding. Consequently, this case is Blakely-Booker-Foster compliant." *Page 11 
 {¶ 23} In the present case, the record indicates that the grand jury indicted Hunter on the RVO specification on September 29, 2004. The record further indicates that after a bench trial in which the State presented evidence, the trial court concluded that the RVO specification had been proven beyond a reasonable doubt. Accordingly, the additional sentence was imposed without judicial fact finding. See, also, State v.Roberson, Cuyahoga App. No. 88338, 2007-Ohio-2772.
 {¶ 24} For the reasoning stated in Fitzer, supra, andRoberson, supra, we overrule Hunter's second assignment of error.
 {¶ 25} In his third and final assignment of error, Hunter argues as follows:
 "Appellant was deprived of his liberty without due process of law when he was sentenced under a judicially altered, retroactively applied, and substantially disadvantageous statutory framework."
 {¶ 26} In this assigned error, Hunter argues that Foster, supra, should not apply to his case because his crime occurred prior to theFoster decision. Hunter also claims his due process rights were violated with an ex post facto application of Fosfer because the crime occurred before Foster was released. In State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715, this court concluded that the remedial holding ofFoster does not violate a defendant's due process rights or the ex post facto principles contained therein.
 {¶ 27} Based on this court's precedent, we overrule Hunter's third and final assignment of error. *Page 12 
 {¶ 28} The judgment of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and CHRISTINE T. MCMONAGLE, J., CONCUR. *Page 1